IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JAMES COKER, | ) | Civil Action No. 2:08-1865-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| INTERNATIONAL PAPER COMPANY, | ) | |
| LISA PRIOR, KIRK CARLSON, | ) | |
| AND JOHN GROVER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Georgetown County. It was subsequently removed to this Court by the Defendants on May 12, 2008 based on federal question jurisdiction, as Plaintiff asserts causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq., and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 13, 2009. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on March 31, 2009, following which the Defendants filed a reply memorandum on April 10, 2009. The Defendants have also filed motions to strike various affidavits, to which Plaintiff filed his opposition on April 27, 2009.[1] Defendants filed a reply memorandum on May 7, 2009.

---

[1] By text order entered April 29, 2009, Defendants' motions to strike were consolidated.



1

These motions are now before the Court for disposition.[2]

<h3 style="text-align:center">Background and Evidence[3]</h3>

Plaintiff alleges in his complaint that he is a fifty-eight (58) year old white male who has been diagnosed with hearing loss caused by noise exposure while working at the Defendant International Paper's mill, and with anxiety disorder not otherwise specified. <u>Complaint</u>, ¶ 9. Plaintiff was employed by the Defendant International Paper at its Georgetown Mill in Georgetown, South Carolina. Plaintiff began working at the Georgetown Mill in July 1969 as a general laborer, and served in various positions thereafter. <u>Defendants' Exhibit 1</u>, pp. 16-18, 22. By April 2007, Plaintiff held the position of lead woodyard operator, where he directed the work activities of the woodyard employees. <u>Id</u>, at p. 22. Plaintiff was an hourly employee, and was represented for collective bargaining purposes by the United Steel Workers Union. <u>Defendants' Exhibit 2</u>, at ¶ 9.

Plaintiff represents that he had a disciplinary free employment record with the Defendant International Paper for almost thirty years. <u>See</u> <u>Plaintiff's Exhibit 14</u>, at p. 1. However, on September 30, 1998, Plaintiff and a coworker, David Smith, were involved in a "name calling" incident. Both employees were counseled that they must "work together to do the job", that their behavior was unacceptable, and that any further incidents of this nature would lead to disciplinary action. <u>See</u> <u>Defendants' Exhibit 4</u>. Three years later, in September 2001, Smith along with ten other

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



2

employees at the mill sent a memo to management complaining that the Plaintiff was engaging in "unacceptable behavior" by using foul language and "shouting at and verbally harassing employees unnecessarily . . . ."[4] Plaintiff testified that because he had a hearing disorder, he did not realize how loud he was talking. Plaintiff's Exhibit 3, p. 29.[5]

Almost three years later, in May 2004, Plaintiff was instructing an Hispanic truck driver on the proper procedure for dumping wood chips, during which he made a comment about the driver going "back to Mexico". Defendants' Exhibit 1, p. 48. Plaintiff testified that he never called the driver a Mexican, and that in fact he was from Texas. Id. However, the driver reported to management that Plaintiff had told him that "he would send him back to Mexico if he did not follow procedures", and believed that Plaintiff had treated him with "disrespect". Plaintiff was counseled concerning this incident, and was also advised not to use profanity and vulgar language when communicating with woodyard employees or others. See Plaintiff's Exhibit 17; Defendants' Exhibit 6. Nevertheless, Plaintiff was counseled again six months later, in October 2004, for arguing with another employee. See Defendants' Exhibit 7. This time, Plaintiff had an "Employee Warning Record" placed in his employment file, noting that he was being "suspended in lieu of termination for fourteen (14) days . . . for repeated belligerence and disrespectful behavior towards both his coworkers and outside contractors". Plaintiff was also required to participate in International Paper's Employee Assistance Program and sign a Return to Work Agreement. The Employee Warning

---

[4]This memo also noted that Plaintiff was a "top producer for the company". See Defendants' Exhibit 5.

[5]Defendants do not dispute that Plaintiff now has hearing problems, but argue that it is unclear when he was first diagnosed with hearing loss. See Defendants' Exhibit 1, pp. 87, 91, 164-165. See also Plaintiff's Exhibit 3, p. 86; Plaintiff's Exhibit 4, p. 27.

3



Record concluded by stating that "[a]ny future instances of unsatisfactory performance including unprofessional or unacceptable behavior will result in immediate termination." Id.

While Plaintiff denies that he acted improperly during this incident; see Plaintiff's Exhibit 3, pp. 30-31, 51-64; he executed the Return to Work Agreement on October 28, 2004, in which he acknowledged that his suspension had been for "just cause", that he would participate in the Employee Assistance Program, and certifying that he would work without belligerence or disrespectful actions or behaviors. This agreement also provided that it would remain in effect for a period of five years, and that a failure on the Plaintiff's part to perform any of these conditions would result in his termination. Defendants' Exhibit 8. Plaintiff signed this agreement after receiving advice from local union President Hal James and after consulting with an attorney. Defendants' Exhibit 1, pp. 62-62, 87. Plaintiff testified that if he had not signed this agreement, he would have been fired. Plaintiff's Exhibit 3, p. 60.

Plaintiff testified that he and his attorney thought that hearing loss was causing him to "talk loud", leading his counsel to file a workers compensation claim based on his hearing loss. Defendants' Exhibit 9; Plaintiff's Exhibit 3, pp. 86-89. As a result of this claim, Plaintiff received a monetary award of $8,295.00 and a lifetime supply of hearing aides. Plaintiff's Exhibit 3, pp. 86-88; Plaintiff's Exhibit 16, ¶ 5; Defendants' Exhibit 1, pp. 91, 164-165.

On June 6, 2005, while Plaintiff's workers compensation claim was still pending (it was finally resolved in November 2005), mill employee Geraldine Bailey complained to human resources that Plaintiff had been disrespectful to her. Bailey reported that Plaintiff routinely transported employees to and from the gate, and that during the shift change on May 31, 2005 there had been heavy rain. Bailey reported that she did not collect her things before Plaintiff left to take

4

several employees to the gate, and that rather than return immediately for her, Plaintiff "drove all the way around the back of the mill so that she would have to wait". Bailey advised human resources that when she said something to Plaintiff, he responded: "Maybe when you get tired [of] walking to the gate, you will be downstairs on time". See Defendants' Exhibit 10; Plaintiff's Exhibit 2. Plaintiff testified that he had given Bailey a ride on numerous occasions, and that he did nothing improper on the date in question. Plaintiff's Exhibit 3, pp. 67-68.

The document memorializing this complaint reflects that, because of the last chance agreement in Plaintiff's file, every employee in the woodyard was to be interviewed to determine whether Plaintiff's behavior had changed and/or improved. Thirty-one employees were interviewed, which included fifteen white males, twelve African American males, two African American females, and two white females. While the results of this survey were mixed, a substantial number of the employees had unflattering things to say about Plaintiff's behavior and conduct. Defendants' Exhibit 10. However, no action was apparently taken as a result of this investigation.[6]

On April 10, 2007, an African American truck driver was in the woodyard unloading wood chips, when the crane unloading the chips hit the driver's truck, causing damage. Following this incident, Plaintiff was discussing what happened with some co-employees, one of whom was African American, during which he referred to the truck driver as a "n*****". Defendants' Exhibit 1, pp. 69-71; Plaintiff's Exhibit 3, p. 71. Plaintiff then stated "oops, I shouldn't have said that". Id. While the African American employee, Roy Prew, objected to Plaintiff using that term, Plaintiff

---

[6]Plaintiff testified that he was not informed of this investigation, even though it was company policy that employees against whom a complaint had been filed were to be notified and given an opportunity to respond to the complaint. Plaintiff's Exhibit 3, p. 68; Plaintiff Exhibit 19, pp. 72-73. See also Plaintiff's Exhibit 7 (Collective Bargaining Agreement), pp. 62-66.



testified in his deposition that "[w]e talk that way all the time around the office and woodyard. So I thought everything was, you know, understandable . . . ." Id. For his part, Prew attests that he told Plaintiff he was not offended and even joked with Plaintiff about it. See Plaintiff's Exhibit 22, ¶ 7. Nevertheless, Plaintiff's comment was reported to management by David Smith (and perhaps another employee, Eric Nesbitt), resulting in another investigation. Defendants' Exhibit 1, pp. 72-73, 80; Plaintiff's Exhibit 19, pp. 113-114. Plaintiff was thereafter terminated on April 17, 2007, following which Smith was promoted to Plaintiff's position as woodyard manager. Plaintiff's Exhibit 22, ¶ 11.

Both Plaintiff and the Union appealed his termination to the mill manager, who upheld Plaintiff's termination. The Union did not thereafter pursue a grievance or arbitration. Defendants' Exhibit 1, pp. 62, 109-111. Following Plaintiff's termination, posters were prepared with Plaintiff's picture with the wording "Keep this Man Out of the Mill". The poster was placed outside of Guard Station No. 1 by employee Carolyn Avant, where it remained for one week before being removed. Plaintiff's Exhibit 8; see Defendant's Exhibit 8.[7] During that time, the poster was seen by other employees at the Mill. See Plaintiff's Exhibits 9 and 10.[8]

---

[7]Defendants have moved to strike Avant's Affidavit, asserting that they were not advised of Avant's identity as a potential person with knowledge of Plaintiff's claims in this lawsuit until February 27, 2009, when Plaintiff sent in a third supplementation of his response to Defendants' Request for Production. Plaintiff responds that he disclosed Avant's identity as soon as it was known pursuant to Rule 26(e) Fed.R.Civ.P., and prior to the filing by the Defendants of their motion for summary judgment. The undersigned has considered Avant's affidavit to the extent it is based on personal knowledge, as described above, for purposes of consideration of the Defendants' motion for summary judgment. Defendants are free to file a motion in limine with the trial court if they believe they are entitled to bar Avant from testifying at any trial of this case.

[8]Defendants have filed motions to strike various portions of many of the affidavits Plaintiff submitted with his exhibits opposing summary judgment. However, the undersigned has only
(continued...)



Plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and following receipt of a Right to Sue Notice, filed his complaint in state court. Plaintiff asserts causes of action for unlawful discrimination and retaliation in violation of Title VII and the ADA (Count 1), breach of contract (Count 2), breach of contract accompanied by fraudulent act (Count 3), retaliatory discharge and violation of public policy (Count 4), fraud (Count 5), intentional and/or negligent infliction of emotional distress (Count 6), and defamation (Count 7).

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

## I.

### (Race Discrimination Claim)

In his administrative charge of discrimination filed with the EEOC, Plaintiff stated that African American co-workers had engaged in similar conduct (using racial slurs), but were not

---

[8](...continued)
considered those portions of Plaintiff's affidavits as are based on the personal knowledge of the affiant, as described hereinabove supra and infra. Therefore, for purposes of consideration of the Defendants' motion for summary judgment, Defendants' motion(s) to strike are moot. Defendants may of course object at trial to any testimony of a witness they deem improper.



discharged, leading him to believe that he had been discriminated against because of his race (white) in violation of Title VII.  Defendants' Exhibit 12.  Plaintiff alleges in his complaint that the Defendant International Paper fired him for "racially discriminatory and pretextural reasons not constituting just cause;"  Complaint, ¶ 12; and asserts that the "Defendants" discriminated against him because of his race resulting in his discharge in violation of Title VII.  Complaint, Count 1.

The Defendants discuss Plaintiff's race discrimination claim and present arguments for why they are entitled to summary judgment on this claim in their memorandum supporting summary judgment.  However, Plaintiff failed to address his race discrimination claim or the Defendants' arguments for dismissal of this claim in his opposition memorandum.  As a result, Defendants assert in their reply memorandum that, because Plaintiff did not dispute that the Defendants are entitled to summary judgment on Plaintiff's Title VII race discrimination claim, Plaintiff has abandoned this claim and it should be dismissed.  Plaintiff again did not respond to Defendants' argument for dismissal of his Title VII claim in their reply memorandum, nor has he disputed the Defendants' assertion that he has abandoned this cause of action.

Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's claims on summary judgment.  Forsyth v. Barr, 19 F.3d 1527, 1537 (5ᵗʰ Cir. 1994), cert. denied, 513 U.S. 871 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md. 1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4ᵗʰ Cir. 1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997).  Therefore, Plaintiff's Title VII race discrimination claim should be dismissed.  See Brand v. North Carolina Dep't. of Crime Control & Pub. Safety, 352 F.Supp. 2d 606, 618 (M.D.N.C. 2004)[Holding that employee waived Title VII claim by failing to address that claim in response to employer's



motion for summary judgment].[9]

## II.

## (ADA Claim)

In his administrative charge of discrimination filed with the EEOC, Plaintiff charged that he had been "discriminated against because of being an individual with a disability, and in retaliation for opposing unlawful employment practices, in violation of Title I of the Americans With Disabilities Act . . . ." Defendants' Exhibit 12. Plaintiff asserts in his complaint that he was both discriminated against on the basis of a disability in violation of the ADA, and that he was retaliated against for engaging in protected activity under the ADA. Complaint, ¶¶ 18, 20-22. See also Count 1.

**Discrimination Claim**. In order to maintain a claim under the ADA, Plaintiff must present evidence to show that 1) he is a qualified person with a disability under the ADA, and 2) that the defendant is subject to suit under that statute.[10] 42 U.S.C. § 12112(a); see Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002), cert. denied, 123 S.Ct. 122 (2002); Tyndall v. National Education Centers, 31 F.3d 209, 212 (4th Cir. 1994); Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) [same standards apply to ADA and Rehabilitation Act].[11] In order to have

---

[9]Defendants also address a potential Title VII retaliation claim in their memorandum supporting summary judgment. However, it does not appear that Plaintiff has intended to assert a separate Title VII retaliation claim. See discussion, infra. In any event, if a Title VII retaliation claim is being asserted, it should be dismissed for the same reasons as are set forth in Section I of this Report and Recommendation, supra. See also, Defendants' Exhibit 1, pp. 172-173.

[10]The Defendant International Paper does not contest that it is subject to suit under the ADA.

[11]While some cited cases deal with the Rehabilitation Act rather than the ADA, the standards are the same. Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469,
(continued...)



a claim as a "qualified person with a disability under the ADA", Plaintiff must meet three criteria: first, he must have a "disability"; second, he must have been "qualified" for the job in question; and third, the alleged adverse employment action alleged must constitute unlawful "discrimination" based on his disability. E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); Tyndall, 31 F.3d at 212.

The term "disability" is defined as a) a physical or mental impairment that substantially limits one or more of the major life activities[12] of an individual, b) a record of such impairment, or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); Pollard, 281 F.3d at 467.[13] Defendants[14] argue that Plaintiff does not have a "disability" as that term is defined

---

[11](...continued)
1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act in this case....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area."]; Hooven-Lewis v. Caldera, 249 F.3d at 268.

[12]A "major life activity" is defined as a basic activity that an average person can perform with little or no difficulty, such as walking, hearing, speaking, learning, breathing, standing, lifting, seeing and working. Appendix to 29 C.F.R. § 1630.2(i); see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723-727, n. 7 (5th Cir. 1995); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act).

[13]Although the ADA was amended in 2008 to more clearly define such terms as "disability" and "substantially limits", that Legislation specifically provided that these amendments did not become effective until January 1, 2009. See PUB.L.NO. 110-325, 122 STAT. 3553 (2008); see also EEOC v. Agro Distribution, LLC, 555 F.3d 462, 469 n. 8 (5th Cir. 2009)[ADA amendments do not apply retroactively]; Milhollard v. Summer County Bd. Of Educ., 569 F.3d 562, 565 (6th Cir. 2009)(same); Richardson v. Honda Mfg. Of Ala., LLC, ___ F.Supp. 2d ___, 2009 WL 2171113 at ** 7-9 (N.D.Ala. July 22, 2009); Bateman v. American Airlines, Inc., 614 F.Supp. 2d 660, 670 n. 1 (E.D.Va. 2009). Therefore, Plaintiff's ADA claim has been considered under the standard in effect prior to the enactment of the ADA Amendments Act of 2008.

[14]While the term "Defendants" is used by the parties, only the Defendant International Paper
(continued...)



in the ADA, and therefore cannot even pass the initial threshold for presenting a valid claim under that statute. Hence, the initial issue before this Court is whether Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether his alleged impairment substantially limits a major life activity, whether there is any record of such a substantially limiting impairment, or whether the Defendants regarded him as having such an impairment.

The major life activity at issue here is the life activity of hearing.[15] While Defendants argue that Plaintiff's hearing loss does not constitute a disability because there is no evidence his condition was substantially limiting, it is undisputed that Plaintiff has received a diagnosis of high frequency sensorineural hearing loss, a condition he has had since at least 2005, and that he uses digital hearing aides for amplification binaurally. See Plaintiff's Exhibit 27; Plaintiff's Exhibit 3, p. 28; Defendants' Exhibit 1, p. 19. Plaintiff also filed a workers compensation claim in November 2005 regarding his hearing loss, for which he received a monetary payment as well as a lifetime supply of hearing aides. Considered in the light most favorable to the Plaintiff, this evidence is sufficient to show that Plaintiff suffered from an impairment to a major life activity (hearing). As for whether this impairment was "substantially" limiting, however, Plaintiff does not himself

---

[14](...continued)
is subject to suit under the ADA. Emerson v. Thiel College, 296 F.3d 184, 189 (3rd Cir. 2002).

[15]While Plaintiff also alleges in his complaint that he suffers from "anxiety"; see Complaint, ¶ 9; the only alleged disabling impairment he discusses in his brief is his problem with his hearing. See also Defendants' Exhibit 1, pp. 159-161 [Where plaintiff testified at his deposition that any problems he had with anxiety did not prevent him from performing the essential duties of his job, that he did not need any accommodation for his anxiety, nor did he request any accommodation]. While Plaintiff does discuss the depression and anxiety he has allegedly experienced as a result of the Defendants' conduct as support for his claim for intentional infliction of emotional distress, he does not present this argument as support for a claim that this condition constituted a "disability"under the ADA during his period of employment at International Paper. Plaintiff's Memorandum, p. 4.



11

contend that this condition rendered him unable to work. To the contrary, while Plaintiff notes his need for a hearing aide, he has presented no evidence that any physician placed any restrictions on his work activity as a result of this impairment, and it is undisputed that he continued to work at the mill notwithstanding this impairment. Indeed, Plaintiff himself testified that he was able to perform the essential functions of his job as a woodyard operator. Defendants' Exhibit 1, pp. 159-160. Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468 (4th Cir. 2002)[to be substantially limiting, an impairment must interfere with a major life activity "considerabl[y] to a large degree"]; Stuart v. Danka Corp., 986 F.Supp. 741, 744 (E.D.N.Y. 1997) [for impairment to rise to the level of a disability under the ADA, it must substantially limit one or more of plaintiff's major life activities].

However, it is not necessary for Plaintiff to show that his hearing loss substantially limited him from performing his job since he is not claiming a substantial impairment in his ability to work (which is itself a major life activity); rather, he must merely show that his major life activity of hearing was itself substantially limited. Wilson v. Aetna Life and Casualty Co., 195 F.Supp. 2d 419, 427 (W.D.N.Y. 2002) ["[T]he issue here is whether [Plaintiff's] mitigated hearing loss substantially limits his hearing, not whether his hearing loss substantially limits other life activities such as [working]"]. Since Plaintiff's hearing loss is ameliorated by the use of hearing aides, however, his hearing loss must be examined in light of his use of hearing aides. Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999)[Corrective and mitigating measures must be considered in determining whether an individual is disabled under the ADA]; Wilson, 195 F.Supp. 2d at 426-427 [Under Sutton, courts must examine mitigated hearing loss [hearing as assisted by hearing aides]



when determining whether a claimant's hearing is substantially impaired].[16] Considered in the light

most favorable to the Plaintiff, the evidence shows that in and around the time he was terminated,

Plaintiff had normal hearing in low frequencies, and used digital hearing aides for his bilateral mid

to high frequency sensorineural hearing loss.  See Plaintiff's Exhibit 27.  Plaintiff himself offers no

argument for disability with the use of hearing aides, instead focusing his claim on his condition as

it existed prior to October 2005.  Plaintiff's Memorandum, pp. 2, 13-14.  Therefore, there is no

evidence before the Court to show that Plaintiff's hearing was substantially limited with the use of

hearing aides, if it even remained limited at all.  As such, there is no evidence to show that Plaintiff's

hearing (as corrected by hearing aids) constituted a disability under the ADA at the time of his

termination.  Wilson, 195 F.Supp. 2d at 426, n. 11 [hearing impairment does not in and of itself

constitute a disability under the ADA]; Pollard, 281 F.3d at 468 [to be substantially limiting, an

impairment must interfere with a major life activity "considerabl[y] to a large degree"]; Bradley v.

Harcourt, Brace & Co., 104 F.3d 267, 271-272 (9th Cir. 1996) [summary judgment upheld where

plaintiff failed to produce evidence she in fact had a disability].

   Whether or not Plaintiff actually had a disability at the time of his discharge is not

necessarily dispositive, however, if the Defendants nevertheless "regarded" him as having such a

disability. 42 U.S.C. § 12102(2); see Wilson v. Phoenix Specialty Mfg. Co., Inc., 513 F.3d 378, 384-

385 (4th Cir 2008).  Plaintiff specifically alleges in his complaint that he was "perceived . . . by

Defendants, and has a record of in the personnel files of [International Paper], suffering various

---

[16]In considering the disability in its mitigated state, courts should also "consider any negative side effects suffered by an individual resulting from the use of mitigating measures . . . ." Sutton, 527 U.S. at 484, Wilson, 195 F.Supp. 2d at 427.  Plaintiff has presented no evidence of negative side effects from wearing hearing aides.



disabilities . . . ." Complaint, ¶ 18. See MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996), citing Dutcher v. Ingalls Shipbuilding, 53 F.3d at 727 [holding that the Plaintiff "might have qualified as disabled under the ADA if he could have provided sufficient summary judgment evidence that he was regarded by [the Defendant] as having an impairment that substantially limited a major life activity, whether he actually had such an impairment or not."]; Rhodes v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001). In support of this argument, Plaintiff has presented evidence to show that International Paper had been aware of his hearing problems since at least 1998; see Plaintiff's Exhibit 4; and argues that many of the employment problems he incurred after that time were based on his lack of hearing and resulting "loud speaking".

However, even if the Court were to accept Plaintiff's contention that the Defendants regarded him as having a substantially limiting disability prior to 2005, Plaintiff's claim in this lawsuit is that he was discriminatorily discharged in 2007 because of his disability. Plaintiff's Complaint, ¶¶ 20, 23. There is no evidence to show that they believed he had any such substantially limiting disability after he began using hearing aides. See discussion, supra. Further, Defendants argue that even if Plaintiff's discrimination claim involves more than just his discharge, any alleged discrimination against the Plaintiff because of a hearing disability (whether in fact or under a "regarded" as theory) prior to his discharge would be time barred, as all of these other alleged discriminatory acts occurred more than three hundred days prior to Plaintiff having filed his charge of discrimination with the EEOC. Cf. Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1222 (10th Cir. 2006)["[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new [300-day] clock for filing charges alleging that act."] (quoting Nat'l R. R. Passenger Corp. v.



14

Morgan, 536 U.S. 101, 113 (2002)).

Plaintiff does not address Defendants' time bar argument in his brief, but does claim that his previous disciplinary actions (which he contends were based on conduct caused by his disability - his hearing loss) were what in toto resulted in his termination following the incident in 2007, all as a result of his "having a hearing disability that forced him to speak loudly when communicating with co-workers". Plaintiff's Memorandum, p. 17; see also Haynes, 456 F.3d at 1223 ["statute does not 'bar an employee from using prior acts as background evidence in support of a timely claim.'"] (quoting Morgan, 536 U.S. at 113). Plaintiff's argument fails on several fronts. First, the event which (according to the Defendants) caused Plaintiff's termination (using the term "n*****" during a conversation with co-workers) occurred in 2007. There is no evidence to support Plaintiff's claim that the Defendants fired him in 2007 "for having a hearing disability that forced him to speak loudly when communicating with co-workers", because by 2007 he had been wearing hearing aides since 2005. Plaintiff's Exhibit 3, pp. 28, 89, 162; Plaintiff's Exhibit 27; Defendants' Exhibit 1, p. 19. Further, even accepting Plaintiff's argument for purposes of summary judgment that his termination was not as a result of this one incident, but was a result of his accumulation of disciplinary citations going all the way back to 1998, and further assuming that it is legally proper for this Court to consider these prior disciplinary actions; cf., Thomas v. Eastman Kodak Co., 183 F.3d 38, 47-55 (1st Cir. 1999); see also Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1412-1421 (3d Cir. 1991), cert. denied, 502 U.S. 1 (1991); Plaintiff's ADA discrimination claim still fails for lack of probative evidence, as he has failed to set forth facts "which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination". Ennis v. National Ass'n of Business and



15

Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995), as amended (March 14, 2008).

Specifically, even if the evidence otherwise showed that Plaintiff had hearing loss prior to 2005 sufficient to constitute a disability under the ADA, Plaintiff has presented no evidence of any statements and/or actions by any supervisor or decision maker which evidence a discriminatory animus based on this hearing loss. While Plaintiff characterizes the disciplinary actions taken against him as having been based on his "shouting at" employees, conduct he alleges was caused by his hearing loss, the evidence provided to the Court belies Plaintiff's assertion that the disciplinary actions taken against him were based on this disability. The incident in September 1998 involved "name calling" between Plaintiff and another employee where both employees were deemed to have been acting unprofessionally; the incident of September 2001 involved Plaintiff not just "shouting at" other employees, but verbally harassing them and using foul language; the incident in May 2004 involved Plaintiff using language reflecting an anti-Hispanic animus, with Plaintiff further being counseled not to use profanity and vulgar language when communicating with other employees; the October 2004 incident involved Plaintiff "arguing" with another employee; the June 2005 incident involved Plaintiff being disrespectful to another employee and refusing to give her a ride to her car because she had not been "downstairs on time"; and the incident of April 2007 involved Plaintiff using, in front of co-workers (including an African American co-worker), a word which has been described as "perhaps the most offensive and inflammatory racial slur in [the] English [language]." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1116 (9th Cir. 2004)(quoting Swinton v. Potomac Corp., 270 F.3d 794, 817 (9th Cir. 2001)); see generally, Defendants' Exhibits 4, 6, 7, 8, 10 and 11; Plaintiff's Exhibits 2, 17.

The undersigned can discern no inference in this evidence sufficient to give rise to



16

a genuine issue of fact as to whether the adverse employment action(s) taken against the Plaintiff were the result of discrimination against him because of a hearing disability, nor is there evidence that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Ennis, 53 F.3d at 58. While Plaintiff forcibly argues that the culminating event leading to his termination (his use of a racial epitaph) was something that other employees at the mill also did, and that neither this event nor the other disciplinary citations he had accumulated since 1998 justified his dismissal, this belief, no matter how sincere or heartfelt, is simply not evidence sufficient to support an ADA claim. *Cf.* Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief under the ADA....], cert. denied, 530 U.S. 1262 (2000); Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; see also Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own belief and conclusory statements that he had been discriminated against based on a disability is not sufficient to raise reasonable inference of unlawful discrimination].

Therefore, the Defendants are entitled to summary judgment on Plaintiff's ADA discrimination claim.

**Retaliation Claim**. Plaintiff's claim of retaliation is asserted under § 503(a) of the ADA, 42 U.S.C. § 12203(a), which provides as follows:

No person shall discriminate against any individual because such individual has



17

opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Retaliation cases under the ADA are subject to the same requirements of proof as are applicable to Title VII disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse action. Id.; Freilich v. Upper Chesapeake Health, Inc Co., 313 F.3d 205, 216 (4th Cir. 2005); Harmer v. Virginia Elec. and Power Co., 831 F.Supp. 1300, 1308 (E.D.Va. 1993). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Ennis, 53 F.3d at 58; Harmer, 831 F.Supp. At 1308.

With respect to his prima facie case, Defendants argue that Plaintiff engaged in no protected activity under the ADA, which in and of itself would defeat Plaintiff's ADA retaliation claim. After careful review and consideration of the evidence submitted and Plaintiff's arguments, the undersigned is constrained to agree. Plaintiff asserts that he engaged in protected activity when he filed his hearing loss workers compensation claim. Plaintiff's Brief, p. 3. See also Defendants' Exhibit 1, pp. 172-173 [Where Plaintiff testified that he believed he had been "retaliated against" by being fired "for having hearing loss"]. However, while being retaliated against for filing a



18

workers compensation claim could certainly constitute a cause of action under state law, and indeed Plaintiff has asserted a state law claim for retaliation based on his having filed his workers compensation claim, it does not constitute protected activity under the ADA. See 42 U.S.C.A. § 12203(a)["No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by *this chapter* . . . "]; Fleury v. New York City Transit Authority, No. 02-5266, 2004 WL 2810107 at * 5 (E.D.N.Y. Dec. 8, 2004)[Filing a worker's compensation claim does not constitute protected activity under the ADA], rev'd in part on other grounds, 160 Fed. Appx. 34 (2d Cir. Dec. 15 2005); Cf. Jimenez v. Potter, No. 06-50104, 2006 WL 3821527, at * 1 (5th Cir. Dec. 22, 2006); Rodriguez v. Beechmont Bus Serv., Inc, 173 F.Supp. 2d 139, 150 (S.D.N.Y. 2001)[complaints about job safety under OSHA are not protected activity under Title VII], vacated on other grounds, 162 F.3d 1147 (2d Cir. 1998).

Therefore, Plaintiff having failed to establish an essential element of his ADA retaliation claim, this claim should be dismissed. Dowe v. Total Action Against Poverty in Roanoke, 145 F.3d 653, 657 (4th Cir. 1998)[Plaintiff must proffer evidence sufficient to create a genuine issue of fact that his employer "[took] the adverse employment action[s] because [he] engaged in a protected activity."]; Cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ["Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."].



19

# III.

## (Pendant State Law Claims)

With respect to Plaintiff's remaining state law causes of action, if the Court adopts the recommendation set forth herein with regard to Plaintiff's federal claims, these pending state law claims will be the only claims remaining in this lawsuit. There is no basis for a maintenance of these claims in Federal Court through diversity jurisdiction[17], and when federal claims presented in a case originally filed in state court (but subsequently removed to federal court) are dismissed, any remaining state law claims over which the federal court does not otherwise have jurisdiction should be remanded back to state court for resolution under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Mellon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

Remand of these remaining state law causes of action will not only allow the more appropriate court to rule on these exclusively state law claims, but will not prejudice the parties. Since these claims have already briefed, the parties may seek a fast track for resolution of these claims at the state level. See Rule 40(c) S.C.R.Civ.P. Additionally, if summary judgment were to be denied, it would be much more appropriate for these state law claims to be considered and tried by the state courts. Carnegie-Mellon, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

---

[17]Defense counsel confirmed with the Court that there is currently no basis for federal court diversity jurisdiction over Plaintiff's state law claims.

20



jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."]; <u>Gibbs</u>, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"]; <u>see</u> <u>Clark v. Brown</u>, 861 F.2d 66, 68 (4th Cir. 1988)[Directing dismissal of state law claims on remand following dismissal of Plaintiff's federal § 1983 claim]; <u>Mills</u>, 709 F.Supp. at 675-676 [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit]; <u>Roche v. Town of Wareham</u>, 24 F.Supp. 2d 146, 154 (D.Mass. 1998)[Remanding state law claims after considering "concerns of comity, judicial economy, convenience, fairness, and the like"].

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to the federal claims asserted in this lawsuit be **granted**, and that those claims be **dismissed**. It is further recommended that Plaintiff's remaining state law claims then be **remanded** back to state court for disposition.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

September 22, 2009
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

